**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| MICHAEL MARGOLIS,<br><br>Plaintiff,<br><br>v.<br><br>U-HAUL INTERNATIONAL, INC., *et al.*,<br><br>Defendants. |

Civil Action No. 10-169 (BAH)
Judge Beryl A. Howell

**<u>MEMORANDUM OPINION</u>**

In June 2005, plaintiff Michael Margolis rented a U-Haul truck to facilitate his move from Maryland to Mexico. The plaintiff's rental truck broke down twice during his cross-country drive and necessitated time-consuming repairs. In addition to the inconvenience and delay to his schedule, the plaintiff was overcharged for his rental in the amount of $1,025.69. The plaintiff filed this case alleging in three counts that defendants U-Haul International, Inc. (hereinafter "UHI") and U-Haul Company of Maryland, Inc. (hereinafter "UHMD") falsely advertised and misrepresented the quality of their vehicles in violation of the District of Columbia Consumer Protection Procedures Act (hereinafter "CPPA"). Both defendants have moved for summary judgment, arguing, *inter alia*, that Maryland law governs this dispute because the advertisement of which the plaintiff complains was published, approved, and viewed in Maryland by a Maryland resident. The Court agrees that the instant dispute does not have a sufficient connection to the District of Columbia to warrant application of D.C.'s Consumer Protection statute. Accordingly, the defendants' motions for summary judgment are granted.

I.      **BACKGROUND**

The undisputed facts material to resolution of the defendants' summary judgment

motions are as follows.  In June 2005, plaintiff Michael Margolis, who was then a resident of

Maryland and is now a resident of Pennsylvania, decided to move from his home in Maryland to

accept a teaching position in Guanajuata, Mexico.  Pl.'s Response to Def. UHMD's Statement of

Undisputed Material Facts, ECF No. 40, (hereinafter "Pl.'s SUMF"), ¶ 14; Am. Compl. ¶ 1.

While in Maryland, the plaintiff searched a yellow page directory for a company from which to

rent a moving truck.  Pl.'s SUMF, ¶ 15.   He ultimately decided to rent a U-Haul truck after

noticing a U-Haul advertisement.  *Id.* ¶¶ 15-17.  While in Maryland or Ohio, but not in D.C., the

plaintiff reserved a U-Haul vehicle and a tow dolly for a seven-day rental through the internet

website www.uhaul.com for pick-up on June 29, 2005 in the "Maryland area" and for return on

July 6, 2005 at a U-Haul location in Texas.  *Id.* ¶ 17; Am. Compl. ¶¶ 24, 30.  The U-Haul

website required him to input a zip code for preferred pick-up locations, but the plaintiff did not

otherwise request a specific pick-up location for his rental equipment.  Pl.'s SUMF, ¶ 18.

Shortly before the scheduled rental date, the plaintiff was informed that he should pick-up

his reserved U-Haul equipment from U Street Rentals located at 919 U Street, N.W. in

Washington, D.C.[1]  *Id.* ¶¶ 5, 19.  On June 29, 2005, the plaintiff arrived at U Street Rentals,

where he found the truck he reserved in disrepair and the odometer reading 233,420 miles.  *Id.* ¶

21.   The plaintiff relayed his dissatisfaction with the condition of the vehicle to U Street Rentals,

but was told "that there was just nothing else around" and "it was all that was available." *Id.*   A

U Street Rentals' representative also informed the plaintiff that they did not have a tow dolly,

which he had previously reserved, and he would have to pick that item up from another location

in Rockville, Maryland.  *Id.* ¶ 25.  The plaintiff then signed the rental agreement, paid U Street

---

[1] U Street Rentals is no longer in business and is not a party to this case.

Rentals for the equipment, and returned to Maryland to pick-up the tow dolly he had reserved. *Id*. ¶¶ 22, 25.  After the plaintiff picked up his tow dolly from the Rockville location, he was then forced to return to U Street Rentals to have it installed on the truck.  *Id*. ¶ 25.

Upon returning home with his U-Haul truck, the plaintiff noticed a substantial amount of oil leaking from the vehicle and exhaust fumes entering the cabin.  *Id*. ¶ 26.  The plaintiff called U-Haul's roadside assistance number, and U-Haul sent a mechanic to make the necessary repairs, which delayed the start of the plaintiff's journey by one day.  *Id*.; Am. Compl. ¶¶ 33-34.

Three days into his move, while driving through Louisiana, the plaintiff realized the exhaust issues had not been resolved, forcing him to stop at a gas station and again call U-Haul roadside assistance for help.  Am. Compl. ¶ 35.   After inspecting the vehicle, U-Haul agents determined that it would take several days to make the necessary repairs and, the following day, gave the plaintiff a replacement vehicle.  *Id*. ¶ 37.  The plaintiff then signed a revised contract, which stated that he had to return the replacement vehicle in Texas by July 7th.  *Id*. ¶¶ 36-38. Following the breakdown of his vehicle in Louisiana, the plaintiff contacted U-Haul to complain. He requested, and was allegedly promised, a refund and reimbursement for hotel accommodations.  *Id*. ¶ 39; Pl.'s SUMF, ¶ 26.

Two days later, the plaintiff reached the drop-off location and asserts that he timely returned his vehicle pursuant to the original contract.  Am. Compl. ¶¶ 40-41.  The drop-off location was closed when the plaintiff arrived, and the plaintiff left the keys in the designated after-hours drop box.  *Id*. ¶ 40.  The plaintiff returned to the location the next day to ensure that the vehicle was dropped-off and gain more information about his refund.  *Id*. ¶ 41.   At the Texas location, the plaintiff was told that there would be an additional $1,025.69 charge on his credit card due to the late return of the truck and for dropping the truck off at the wrong location.  Pl.'s

SUMF ¶ 27.  The late fee charged on his credit card appeared from "U-Haul-Highway-Stora#327 McAllen TX."  *Id.*   As a result of this late fee, as well as the delay and expense caused by the malfunction of the U-Haul rental vehicle, the plaintiff estimates that he was injured in an amount between $4,000 and $5,000.  *Id.* ¶ 28.

On July 30, 2007, the plaintiff filed a Complaint in District of Columbia Superior Court against U-Haul International, a business incorporated in Nevada with its principal place of business in Phoenix, Arizona, on behalf of himself and in a representative capacity, alleging misrepresentation and false advertising under the CPPA.[2]  On September 19, 2007, defendant UHI removed the case to the U.S. District Court for the District of Columbia pursuant to 28 U.S.C. § 1332(a), diversity jurisdiction, and 28 U.S.C. § 1332(d)(2), which grants federal courts original jurisdiction over certain class action complaints.  The district court and the D.C. Circuit determined that it did not have subject matter jurisdiction because the total possible damages did not meet the $75,000 threshold requirement for diversity jurisdiction, and the plaintiff had not alleged a class action, but was only proceeding in a representative capacity under the CPPA.[3]  Consequently, the court remanded the case back to Superior Court on May 15, 2009.  *In re U-Haul Int'l, Inc.*, No. 08-7122, 2009 WL 902414 (D.C. Cir. Apr. 6, 2009) (per curiam); *Margolis v. U-Haul Int'l, Inc.*, No. 07-cv-1648 (Order dated Sept. 8, 2008) (Collyer, J.).

---

[2] The plaintiff has not asserted a breach of contract claim against the defendants.  At oral argument, counsel for the defendants stated:  "To say that this was an unfortunate, unsuccessful and unhappy rental would be an understatement and were this case about recompense for that, I'll call it a failed rental experience, we wouldn't be standing here today. Confirmation of that, of course, is the fact that at no point in any proceeding has there ever been a breach of contract claim by Mr. Margolis against anybody."  Transcript of Oral Argument (Rough), *Margolis v. U-Haul Int'l*, No. 10-cv-169 (D.D.C. Sept. 2, 2011).

[3]  Representative actions brought under the D.C. Consumer Protection Procedures Act ("CPPA") constitute a "separate and distinct procedural vehicle from class action."  *Breakman v. AOL LLC*, 545 F. Supp. 2d 96, 101 (D.D.C. 2008).  Therefore, claims brought as representative actions pursuant to the CPPA are exempt from the requirements set forth in the Class Action Fairness Act ("CAFA").  *See id.* at 108 (concluding that a representative action did not constitute "a class action to which the [CAFA] applies").

After three months of discovery in D.C. Superior Court, defendant UHI moved to dismiss the plaintiff's complaint on grounds, *inter alia*, that Maryland law should apply to the plaintiff's misrepresentation and false advertising claims and the plaintiff should not be able to assert claims under the CPPA. The D.C. Superior Court denied defendant UHI's motion to dismiss, ruling that the allegations in the Complaint were sufficient to maintain an action under D.C. law. *Margolis v. U-Haul Int'l, Inc.*, 2009 D.C. Super. LEXIS 8 (D.C. Sup. Ct. Dec. 17, 2009). The court also ruled that while the plaintiff could seek injunctive relief in a representative capacity, the plaintiff could not seek money damages on behalf of third parties without obtaining class certification and complying with Rule 23 of the D.C. Superior Court Rules of Civil Procedure. *Id.* at *4-5.

On January 15, 2010, the plaintiff amended his complaint in D.C. Superior Court to assert a class action pursuant to Rule 23 of the D.C. Superior Court Rules of Civil Procedure, *see* Compl. ¶¶ 45-60; *see also* D.C. CODE, § 28–3905(k), and also added as a defendant U-Haul Company of Maryland, a Maryland corporation with its principal place of business in Hyattsville, Maryland. Pl.'s SUMF, ¶ 1. The plaintiff's Amended Complaint asserts three counts under the CPPA, alleging that the defendants engaged in misrepresentation and false advertising by (1) "representing that their rental trucks are the 'newest trucks for household movers' . . . when, in fact many were old and deteriorated;" (2) failing to honor confirmed reservations and meet the demand for advertised goods and services; and (3) failing to disclose late fee, return of equipment, and credit card charge policies. Am. Compl. ¶¶ 14, 93, 95, 112. The plaintiff seeks injunctive relief directing the defendants to cease their allegedly unlawful acts; monetary damages, including statutory and/or treble damages pursuant to D.C. CODE § 28-

3905(k)(1)(A); punitive damages; an accounting of the late fees and additional charges imposed; disgorgement; and attorney's fees.  Am. Compl. (Prayer For Relief).

On January 29, 2010, the defendants removed this case to federal court pursuant to the Class Action Fairness Act ("CAFA"), which grants district courts original jurisdiction over class actions where there is diversity between a member of the proposed class and a defendant, and the aggregate amount in controversy exceeds $5,000,000.  28 U.S.C. § 1332(d)(2)(A), (B); *see also Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 571 (2005) ("Subject to certain limitations, the CAFA confers federal diversity jurisdiction over class actions where the aggregate amount in controversy exceeds $5 million.  It abrogates the rule against aggregating claims . . . .").

On June 11, 2010, defendants UHI and UHMD moved separately for summary judgment, arguing, *inter alia*, that Maryland, not District of Columbia, law was more properly applicable to the dispute.[4]  ECF Nos. 21-22.  On July 1, 2010, the plaintiff requested the Court to "continue or deny" the defendants' summary judgment motions pursuant to FED. R. CIV. P. 56(f) because, according to the plaintiff, the defendants' motions "were filed before merits discovery [had] commenced."  ECF No. 23, at 1.  The Court granted in part and denied in part the plaintiff's motion, ruling that briefing regarding defendant UHI's summary judgment motion should proceed because the plaintiff had the opportunity for three months to obtain discovery from this defendant in D.C. Superior Court prior to removal, but stating that the plaintiff was entitled to

---

[4] After removing the case to this Court, on April 9, 2010, the plaintiff filed a motion to continue the requirements of Local Civil Rule 23.1(b), which requires a plaintiff file a motion for class certification within 90 days of filing a class action complaint, because he argued that "additional discovery [was] necessary prior to class certification."  Pl.'s Mot. to Continue Requirements of LCvR 23, ECF No. 14, at 2.  The defendants filed motions for summary judgment shortly thereafter. This case was transferred to the current presiding judge on January 19, 2011.  On September 2, 2011, at oral argument on the defendants' motions for summary judgment, the Court granted the plaintiff's motion to continue the requirements of Local Rule 23, and directed the plaintiff to file a motion for class certification "within 45 days of the Court's resolution of the defendants' pending motions for summary judgment unless leave is sought and granted for additional discovery."  Minute Order dated September 2, 2011 (Howell, J.).

discovery regarding defendant UHMD's motion.  Orders dated Aug. 24, 2010 (Collyer, J.), ECF
Nos. 35-36.

Following approximately two months of discovery, defendant UHMD filed a renewed
motion for summary judgment on December 1, 2010.  ECF No. 39.[5]  On September 2, 2011, the
Court held oral argument on the defendants' motions for summary judgment.  Both of these
motions are pending before the Court.

As explained below, the Court concludes that the law applicable to the plaintiff's
misrepresentation and false advertising claims is the law of the State of Maryland, not the law of
the District of Columbia.  The plaintiff therefore may not assert claims under the CPPA.
Accordingly, the defendants' motions for summary judgment are granted.

## II.     STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant a motion for
summary judgment "if the movant shows that there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law" based upon the pleadings, depositions,
and affidavits and other factual materials in the record.  FED. R. CIV. P. 56(a), (c); *Talavera v.
Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  The
Court "need consider only the cited materials, but it may consider other materials in the record."
FED. R. CIV. P. 56(c)(3).  "The evidence is to be viewed in the light most favorable to the
nonmoving party and the court must draw all reasonable inferences in favor of the nonmoving
party."  *Talavera*, 638 F.3d at 308 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250,

---

[5] In addition to filing an opposition to UHMD's motion for summary judgment, the plaintiff also sought leave to file
a supplemental brief opposing UHI's motion for summary judgment, arguing that the discovery it undertook with
regard to UHMD "bears on plaintiff's opposition to both UHI and UHMD's motions for summary judgment." Pl.'s
Mot. Leave to File Suppl. Opp'n Def. UHI's Mot. Summ. J., ECF No 41, at 2.  The Court granted the plaintiff leave
to file a supplemental opposition brief, and also granted defendant UHI an opportunity to respond. Minute Order
dated September 2, 2011 (Howell, J). Defendant UHI filed its supplemental brief on September 14, 2011, ECF No.
49.  The parties then sought leave to file post-hearing briefs, ECF Nos. 50-51, which the Court granted.  Minute
Order dated Oct. 4, 2011 (Howell, J.).

255 (1986)); *Tao*, 27 F.3d at 638.  However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Talavera*, 638 F.3d at 308 (citing *Anderson*, 477 U.S. at 252).  The burden is on the moving party to demonstrate that there is an "absence of a genuine issue of material fact" in dispute.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## III.   DISCUSSION

The defendants argue, *inter alia,* that judgment should be entered in their favor because the plaintiff's claims are not sufficiently connected to the District of Columbia to warrant application of D.C. law.  The defendants are correct that the plaintiff's misrepresentation and false advertising claims arise more appropriately under the law of Maryland because the advertisements were published, approved, and viewed in Maryland by a Maryland resident.  The plaintiff therefore may not assert claims under the CPPA.  Prior to addressing the defendants' choice of law argument, however, the Court addresses the plaintiff's assertion that the law of the case doctrine precludes this Court from concluding that District of Columbia law does not apply.

### A.  The Law of the Case Doctrine Does Not Apply

The plaintiff contends that prior to removal to this Court, "[t]he D.C. Superior Court, interpreting its home state law, rejected [the] argument" that District of Columbia law does not apply to the plaintiff's claims.  Pl.'s Opp'n Def. UHI Mot. Summ. J, ECF No. 37, at 3. Thus, the defendants are "barred by the law of the case doctrine" from arguing that Maryland law applies to this dispute.  *Id.* at 4.  The plaintiff, however, is incorrect.

The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Pepper v. United States,* 131 S.Ct. 1229, 1250 (2011) (internal quotation marks omitted).

This principle applies to "issues decided both explicitly and by necessary implication." *PNC Fin. Servs. Grp., Inc. v. C.I.R.,* 503 F.3d 119, 126 (D.C. Cir. 2007) (internal quotation marks omitted). "Although failure to adhere to the law of the case doctrine may in some cases constitute abuse of discretion, adherence to the doctrine is not mandatory." *Sloan v. Urban Title Servs., Inc.* 770 F. Supp. 2d 216, 223-24 (D.D.C. 2011) (quoting *Moore v. Hartman,* 332 F. Supp. 2d 252, 256 n.6 (D.D.C. 2004)).

The plaintiff argues that in denying defendant UHI's motion to dismiss, the D.C. Superior Court stated that it found "no basis to dismiss [the] case on choice of law grounds" because "[a]t a minimum, plaintiff Margolis is asserting claims under the CPPA that arise from a consumer transaction that took place in the District of Columbia, when Mr. Margolis rented a U-Haul truck here." *Margolis v. U-Haul Int'l, Inc.*, 2009 D.C. Super. LEXIS 8, at *30-31 (D.C. Sup. Ct. Dec. 17, 2009). As the D.C. Superior Court already ruled on the choice of law issue, the plaintiff asserts that the Court should not "revisit an issue that the Superior Court just disposed of [and] should find [defendants'] argument without merit." Pl.'s Opp'n Def. UHI Mot. Summ. J, ECF No. 37, at 5.

The plaintiff fails to appreciate, however, that the D.C. Superior Court's choice of law ruling was made on a motion to dismiss, which is an interlocutory order. *Int'l Union, United Gov't Sec. Officers of Am. v. Clark*, 706 F. Supp. 2d 59, 65 (D.D.C. 2010) ("The Supreme Court has made clear that denial of a motion to dismiss is an interlocutory order," citing *Office of Senator Mark Dayton v. Hanson,* 550 U.S. 511, 515 (2007)). The D.C. Circuit has explicitly stated that "[i]nterlocutory orders are not subject to law of the case doctrine and may always be reconsidered prior to final judgment." *Langevine v. District of Columbia,* 106 F.3d 1018, 1023 (D.C. Cir. 1997).

In this case, the D.C. Superior Court's choice of law ruling must clearly be revisited. When concluding that the plaintiff could maintain his CPPA causes of action, the Superior Court was bound to accept as true the allegations in the plaintiff's complaint and afford the plaintiff all reasonable inferences.  Indeed, the Superior Court expressly stated that "at least at this juncture" the plaintiff's allegations were sufficient to proceed under District of Columbia law.  *Margolis*, 2009 D.C. Super. LEXIS 8, at *30-31.

The defendants now assert a choice of law argument in a motion for summary judgment, and "the Court is no longer under a duty to presume the [plaintiff's] allegations to be true." *Clark*, 706 F. Supp. 2d at 65.  Moreover, since the Superior Court's denial of the motion to dismiss, the parties have engaged in discovery and the Court must consider the factual materials now in the record and the plaintiff can no longer rely on the allegations in his complaint to assert his claims.  *See Shaw v. Marriot Int'l*, 570 F. Supp. 2d 78, 81 (D.D.C 2008) (where court concluded on summary judgment that D.C. law did not apply after previously denying defendant's motion to dismiss on choice of law grounds), *rev'd in part on other grounds* 605 F.3d 1039 (D.C. Cir. 2010).  Indeed, when the Superior Court considered the plaintiff's motion to dismiss, the court presumed that the plaintiff obtained and viewed the allegedly deceptive advertisement, and made his U-Haul reservation from the District of Columbia.  *Margolis*, 2009 D.C. Super. LEXIS 8, at *29-30.[6]  The record now demonstrates that all of these actions took

---

[6] In reaching its conclusion to reject defendant UHI's choice of law argument, the Superior Court stated:

> The defendant further argues that in misrepresentation cases, the place where the injury occurred is where the plaintiff 'received the alleged misrepresentation.' *See Shaw v. Marriott Int'l*, 570 F. Supp. 2d 78, 88 (D.D.C. 2008). Mr. Margolis makes no specific claim that he ever saw the advertisement in the District of Columbia. Nonetheless, the Complaint does assert that the offending advertisement was distributed in the District, and any question in that regard therefore is resolved in favor of the plaintiff at this juncture.

> In addition, the defendant argues that where the conduct causing the injury occurred should be determined by where the defendant sets its 'practices and policies,' *id.*, which presumably is Arizona, where UHI maintains its corporate headquarters. But there is no allegation in the Complaint that the advertisement

place outside of D.C. in Maryland or Ohio.  Pl.'s SUMF, ¶¶ 14-17.  The Court therefore rejects

the plaintiff's argument that the 'law of the case' doctrine prevents the defendants from asserting

at this procedural juncture that District of Columbia law does not apply to this case.

### B.  Maryland Law Properly Applies to the Plaintiff's Claims

The defendants contend that District of Columbia law, and therefore the CPPA, does not

apply to this case because the plaintiff's misrepresentation and false advertising claims are not

sufficiently connected to the District.  The Court agrees that Maryland law is more properly

applicable to this dispute.

When exercising diversity jurisdiction, the Court applies the choice of law rules of the

forum.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Shaw v. Marriott Int'l*,

Inc., 605 F.3d 1039, 1045 (D.C. Cir. 2010).  Under District of Columbia law, the Court must first

determine whether a "true conflict" exists between the laws of the competing

jurisdictions.  *Estate of Doe v. Islamic Republic of Iran*, No. 08-cv-540, 2011 WL 3585963, at

*16 (D.D.C. Aug. 16, 2011);  *Sloan v. Urban Title Servs., Inc.*, 689 F. Supp. 2d 123, 132

(D.D.C. 2010) (quoting *GEICO v. Fetisoff*, 958 F.2d 1137, 1141 (D.C. Cir. 1992)).  If there is no

conflict, the law of the District of Columbia applies by default.  *Estate of Doe*, 2011 WL

3585963, at *16.  If a conflict does exist, courts in this jurisdiction employ a "modified

governmental interests analysis which seeks to identify the jurisdiction with the most significant

relationship to the dispute."  *Washkoviak v. Student Loan Mktg. Ass'n*, 900 A.2d 168, 180 (D.C.

2006);  *see also Doe v. Exxon Mobil Corp.,* No. 09-7125, 2011 WL 2652384, at *44 (D.C. Cir.

---

originated in Arizona or that any policy regarding its use was established there. The Complaint simply alleges
that Mr. Margolis saw the advertisement.

*Margolis*, 2009 D.C. Super. LEXIS 8, at *29-30.

July 8, 2011) ("District of Columbia courts blend a 'governmental interests analysis' with a 'most significant relationship' test." ). The Court addresses each of these issues *seriatim.*

### 1. Maryland and District of Columbia Law Conflict

In his opposition to the defendants' motions for summary judgment, the plaintiff contends that there is "no conflict" between Maryland's Consumer Protection Statute and the CPPA. Pl.'s Opp'n Def. UHMD Mot. Summ. J., ECF No. 40, at 5 n.1; Pl's Opp'n Def. UHI's Mot. Summ. J., ECF No. 37, at 5-7. This is incorrect. "A conflict of laws does not exist when the laws of the different jurisdictions are identical or would produce the identical result on the facts presented." *USA Waste of Md., Inc. v. Love,* 954 A.2d 1027, 1032 (D.C. 2008). On the other hand, a conflict may be found when two jurisdictions have different applicable laws, which would result in different outcomes. *Id.* In this case, if the plaintiff were to litigate his claims under the Maryland Consumer Protection statute, which materially differs from D.C. law, the outcome of this case would be different.

Under the CPPA, a plaintiff may bring, as the plaintiff in this case proposes to do, a representative action for injunctive relief. *Margolis v. U-Haul Int'l*, 2009 D.C. Super. LEXIS 8, at *26 (Dec. 17, 2009). Under Maryland law, a plaintiff may not. *Winemiller v. Worldwide Asset Purchasing, LLC*, No. 09-cv-2487, 2011 WL 1457749, at *7 (D. Md. Apr. 15, 2011) ("As this Court and other courts in this jurisdiction have stated, "declaratory and injunctive relief is not available under the . . . MCPA," quoting *Bradshaw v. Hilco Receivables, LLC,* 765 F. Supp. 2d 719, 733 (D. Md. 2011)). If Maryland law were applicable, the plaintiff simply could not assert his claims. This distinction between Maryland and D.C. law decisively demonstrates that the two laws are in conflict. Accordingly, the Court must consider the 'Government Interest'

and 'Significant Relationship' tests to determine whether the plaintiff may maintain this action under the CPPA.

### 2. *Governmental Interest Test Favors Application of Maryland Law*

The governmental interest analysis requires the Court to "evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be most advanced by having its law applied to the facts of the case under review." *Exxon Mobil Corp.*, 2011 WL 2652384, at *44 (quoting *Oveissi v. Islamic Republic of Iran*, 573 F.3d 835, 842 (D.C. Cir. 2009)).  With regard to claims under the CPPA, "[t]he District of Columbia has an interest in protecting its own citizens from being victimized by unfair trade practices and an interest in regulating the conduct of its business entities." *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1045 (D.C. Cir. 2010).

The defendants argue that the "District of Columbia has no interest in having the CPPA applied [because] [n]either the defendants, nor the plaintiff, were residents or located in the District of Columbia . . . [and] the only entity that was located in the District of Columbia – U Street Rentals – is not a defendant in this litigation."  Def. UHMD Mot. Summ. J., ECF No. 39, at 12.

In response, the plaintiff correctly notes that the CPPA "is not limited in its application to consumers or companies who are residents of the District," and has also been applied to non-D.C. merchants.  Pl.'s Opp'n Def. UHMD Mot. Summ. J., ECF No. 40, at 10; D.C. CODE § 28-3904 (stating that it is a violation of the CPPA for any "person" to engage in deceptive trade practices); *see also Washkoviak*, 900 A.2d at 180-82 (applying CPPA to claims brought by non-residents); *Williams v. First Gov't*, 176 F.3d 497, 499 (D.C. Cir. 1999) (applying CPPA to non-resident merchant).  That said, unlike other the cases in which non-D.C. residents and defendants

were involved in claims under the CPPA, in this case none of the parties is a resident of the District of Columbia.

Here, defendant UHI is incorporated in Nevada with its principal place of business in Arizona, and defendant UHMD is incorporated in Maryland with its principal place of business in Maryland.  The plaintiff was a resident of Maryland when he saw the allegedly deceptive advertisements in Maryland, made his reservation for the U-Haul truck, and was injured.  The only connection with the District of Columbia involves a party – U Street Rentals – which no longer exists and is not in the case.

In *Shaw v. Marriot Int'l, Inc.*, 570 F. Supp. 2d 78 (D.D.C. 2008), the district court granted summary judgment in favor of the defendant with regard to the plaintiffs' CPPA claim after concluding that District of Columbia law could not be invoked to resolve the parties dispute.  *Id.* at 88.  The court stated that the plaintiffs "seek to apply the CPPA to remedy allegedly improper trade practices which took place outside the District of Columbia 'community,' to a plaintiff . . . who is not a resident of the District of Columbia, to address injuries allegedly caused by a corporation which is neither incorporated nor headquartered in the District of Columbia."  *Id.* at 87.  Given these facts, "it is difficult to argue that the District of Columbia has 'the most significant relationship to' [the] dispute under the governmental interests analysis."  *Id.* at 88.  On appeal, the D.C. Circuit reiterated this conclusion, stating that because "[the plaintiff] is not a citizen of the District and neither [the defendant] nor [its] corporate head is a business entity located in the District . . . [t]he District has little interest in the resolution of their dispute."  *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1045 (D.C. Cir. 2010) (affirming district court's choice of law analysis, but reversing in part the district court's decision on other grounds).

In this case, the plaintiff asserts that the defendants' advertising falsely misrepresented the condition and quality of their trucks.  There is no dispute that the defendants' advertisement was published and viewed in Maryland, and therefore the conduct of which the plaintiff complains took place primarily, if not solely, in that state.  Moreover, none of the parties in this case are or were D.C. residents. The Court therefore concludes that the District of Columbia does not have a strong governmental interest in application of the CPPA in this case.

### 3.  The Significant Relationship Test Favors Application of Maryland Law

When evaluating which jurisdiction has the 'most significant relationship' to the case, courts in the District of Columbia "must consider the factors enumerated in the Restatement (Second) of Conflict of Laws § 145, which are (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered."[7]  *Washkoviak*, 900 A.2d at 180; *Exxon Mobil,* 2011 WL 2652384, at *44; *Oveissi,* 573 F.3d at 842; *Margolis*, 2009 D.C. Super. LEXIS 8, at *26; *see also Estate of Doe*, 2011 WL 3585963, at *16; *Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 59 (D.D.C. 2010); *Whiting v. AARP*, 701 F. Supp. 2d 21, 28 (D.D.C. 2010).  In weighing these factors, the Court concludes that Maryland law has a more significant relationship to the plaintiff's misrepresentation and deceptive advertising claims.

---

[7] In its opposition briefs, the plaintiff urges the Court not to consider Section 145 of the Second Restatement, which has been used repeatedly by courts applying District of Columbia law, but should "take note" of Section 148 of the Second Restatement concerning "fraud and misrepresentation," which directs consideration of "(1) the place, or places, where plaintiff acted in reliance on defendant's representations; (2) the place where plaintiff received the representations; (3) the place where defendant made the representations; (4) the domicile, residence, nationality, place of incorporation and place of business of the parties; (5) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time; and (6) the place where plaintiff is to render performance under a contract which he has been induced to enter by the false representations of defendant."  At oral argument, when asked to address which section of the Restatement applied, plaintiff's counsel stated that "it really doesn't matter." Transcript of Oral Argument (Rough), *Margolis v. U-Haul Int'l*, No. 10-cv-169 (D.D.C. Sept. 2, 2011).  As defendants' counsel noted, "[t]here is no case under the CPPA in the Superior Courts or in federal court that has ever applied 148." *Id.*  Indeed, the D.C. Superior Court applied the factors in Section 145 to this very dispute when ruling on defendant UHI's motion to dismiss.  *Margolis*, 2009 D.C. Super. LEXIS 8, at *27.

*a. The Place of Injury*

The first factor requires the Court to consider the place where the injury to the plaintiff occurred.  According to the Restatement and the District of Columbia Court of Appeals, "'the place of injury is less significant in the case of fraudulent misrepresentations' than 'in the case of personal injuries and of injuries to tangible things.'"  *Washkoviak*, 900 A.2d 181-82 (stating that there was a "discounted value of the place of injury in cases . . . involving claims of misrepresentation" and quoting Restatement (Second) of Conflict of Laws § 145 cmt. f.); Restatement (Second) of Conflict of Laws § 145 cmt. f. ("[T]he place of injury is less significant in the case of fraudulent misrepresentations and of such unfair competition as consists of false advertising and the misappropriation of trade values." (internal citation omitted)); *see also Shaw v. Marriott Int'l, Inc.*, 570 F. Supp. 2d 78, 88 (D.D.C. 2008) *aff'd in part and rev'd in part* 605 F.3d 1039 (D.C. Cir. 2010).  In a typical misrepresentation case, the injury occurs where the plaintiff "received the alleged misrepresentations."  *Shaw*, 570 F. Supp. 2d at 88 (citing *Washkoviak*, 900 A.2d at 181).

In this case, the plaintiff alleges in counts I and II of the Amended Complaint that the defendants violated the CPPA by falsely advertising and misrepresenting the quality, location, and availability of their rental equipment.  Am. Compl. ¶¶ 61-96.  It is undisputed that the plaintiff received and viewed the yellow pages containing these allegedly deceptive advertisements in Maryland.  Pl.'s SUMF, ¶¶ 15-17.  In addition, with regard to the plaintiff's allegation that the defendants misrepresented the location and availability of rental equipment, the parties do not dispute that these representations were made by telephone when the plaintiff was in Maryland.  *Id.* ¶ 19 (disputing only whether a UHI or UHMD representative participated in the call).

In count III of the Amended Complaint, the plaintiff alleges that the defendants violated the CPPA when they "did not clearly disclose their policies regarding return of equipment, late fees, and additional charges to customers' credit cards." Am. Compl. ¶ 108.  Specifically, the plaintiff contends that on July 4, 2005, after his truck had broken down for a second time, the defendants "promised to refund Mr. Margolis for the truck and the one night's hotel expense," which they did not do.  *Id.* ¶¶ 37-43, 106.  Additionally, "despite timely returning the truck . . . [he] was charged an additional amount for an additional day of use for allegedly returning the truck late."  *Id.* ¶¶ 36-43,107.  According to the Amended Complaint, the defendants' alleged misrepresentations concerning a refund and reimbursement for hotel expenses were made when the plaintiff was in Louisiana and had called a U-Haul representative to complain about the rental vehicle's disrepair.  *Id.* ¶¶ 35-37, 39.  With regard to the late fee, the plaintiff states that he entered into a separate rental contract when he was provided with a replacement vehicle in Louisiana.  *Id.* ¶ 38.  The late fee about which the plaintiff complains was charged pursuant to this contract executed in Louisiana, and the charge was collected by a local Texas U-Haul distributor in McAllen, Texas, where the plaintiff returned the rental vehicle.  *Id.* ¶¶ 38, 40-44; Pl.'s SUMF, ¶¶ 26-27.

The plaintiff concedes that critical events resulting in his claimed injuries occurred in Maryland, Louisiana, and Texas, but argues that he acted in reliance on the plaintiff's misrepresentations in the District of Columbia, where he travelled "at Defendant's direction, to sign the rental contract, pick up and pay for the rental truck that he was promised."  Pl.'s Opp'n Def. UHMD Mot. Summ. J., ECF No. 40, at 6.  Indeed, defendant UHI states that it "does not dispute that D.C. has a connection to the actual transaction that occurred between UHMD and Margolis, insofar as Margolis signed a contract in D.C., and there was partial performance of that

contract in D.C."  Def. UHI Suppl. Response in Supp. Mot. Summ. J., ECF No. 49, at 4.  That

said, as defendant UHI notes, the plaintiff's contacts to the District of Columbia during its

interaction with the defendants "would only be relevant if [the plaintiff] were bringing a breach

of contract action," which the plaintiff has chosen not to pursue.  *Id.*

In *Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37 (D.D.C. 2010), for example,

plaintiffs asserted a class action alleging breach of contract, negligent misrepresentation, and

violation of the CPPA against an organizer of educational youth conferences for failing to deliver

on many of its promises and failing to disclose material facts regarding certain of its conferences.

When reviewing the settlement agreement reached in that case, the court addressed the strength

of the plaintiffs' claims, considering separately the claims of misrepresentation and breach of

contract.  With regard to the misrepresentation claims, the court noted that the Restatement

factors "generally point to the application of either the law of Virginia, where Envision is located

and made the representations, or the law of each class member's home state, where he or she

would have received the alleged misrepresentations and paid for the Conferences."  *Id.* at 59

(citing *Washkoviak,* 900 A.2d at 180-82 and *Shaw*, 570 F. Supp. 2d at 86-88).  In contrast, for the

plaintiffs' breach of contract claims the court stated that "[a]lthough choice-of-law analysis for

the breach of contract claims might favor application of District of Columbia law because the

place of performance was, in most instances, the District of Columbia, that conclusion is not

certain." *Id.* (internal citation omitted).

In this case, the plaintiff has alleged only claims of misrepresentation and false

advertising under the CPPA.  Although the plaintiff entered into a contract in the District of

Columbia, the place of plaintiff's injury for the plaintiff's misrepresentation claims are where he

"received the alleged misrepresentations." *Shaw*, 570 F. Supp. 2d at 88.  These alleged

misrepresentations occurred in Maryland, Louisiana, and Texas.

### b.  The Place Where the Conduct Causing the Injury Occurred

The second factor in the choice of law analysis requires the Court to assess where the

conduct causing the injury occurred.  According to the Restatement, as previously discussed,

"the place of injury does not play so important a role for choice-of-law purposes in the case of

false advertising . . . . Instead, the principal location of the defendant's conduct is the contact that

will usually be given the greatest weight." Restatement (Second) of Conflict of Laws § 145 cmt.

f.  In cases alleging a misrepresentation, the place where the conduct causing the injury occurred

is the place where the defendant set its "practices and policies." *Shaw*, 570 F. Supp. 2d at 88,

*aff'd in part and rev'd in part,* 605 F.3d 1044-46.

The defendants argue that there "is no dispute that UHMD sets all of its practices and

policies, including those relating to advertising, rental reservations, and fees, within Maryland."

Def. UHMD Mot. Summ. J, ECF No. 39, at 13. The plaintiff asserts in response that the

allegedly deceptive advertising was not created in Maryland and "was not a UHMD creation: this

campaign appeared not just in Metro-DC Yellow Pages, but on UHI's website, and in other ads

across the country.  The ad was created in Phoenix, AZ by [defendant] UHI's Yellow Page

advertisement department." Pl.'s Opp'n Def. UHMD Mot. Summ. J., ECF No. 40, at 8; *see also*

Pl.'s SUMF, ¶¶ 1, 8-13.  Regardless of whether the advertisements were created and approved in

Maryland by defendant UHMD or in Arizona by defendant UHI, neither party contends that

these acts occurred in the District of Columbia.  UHMD Reply, ECF No. 46, at 9 n.4.  As a

result, the second factor points to application of either Maryland or Arizona law.

   c.  *The Residence, Place of Incorporation, and Place of Business of the
       Parties*

Under the third factor of the choice of law analysis, the Court must evaluate the residency

of the parties in the case.  At the time of the allegations in the Amended Complaint, the plaintiff

was a resident of Maryland.  Pl.'s SUMF, ¶ 14.   Although the plaintiff states that he is now a

resident of Pennsylvania, the Court considers the residency of the plaintiff at the time the alleged

incidents occurred.  *See Huddy v. Fruehauf Corp.*, 953 F.2d 955, 957 (5th Cir. 1992) (conducting

choice of law analysis under Restatement Section 145 and stating that plaintiff's "move more

than three years after suit was filed should not be determinative in the choice of law analysis").

The plaintiff additionally argues that the proposed class in this lawsuit "is centered in the District

of Columbia."  Pl.'s Opp'n Def. UHMD Mot. Summ. J., ECF No. 40, at 9.  The plaintiff has not

moved for class certification and no class has been certified.  Therefore the residency of the

putative class is irrelevant here.  *See Washkoviak*, 900 A.2d at 176 n.11.

Defendant UHI is a Nevada corporation with its principal place of business in Arizona,

and defendant UHMD is incorporated with its principal place of business in Maryland.  The

plaintiff contends that defendant UHMD "does business throughout D.C. as the U-Haul Co. of

Metro D.C" and since 2005 has done business in the District of Columbia."  Pl.'s Opp'n Def.

UHMD Mot. Summ. J., ECF No. 40, at 9.  The defendants counter, however that where a

corporation does business is immaterial for the purposes of a choice of law analysis.  Rather, the

Court's inquiry is focused on where the defendants reside.

To support this position, the defendants relies on *Shaw v. Marriott International*, 605

F.3d 1039 (D.C. Cir. 2010), in which the plaintiff argued that District of Columbia law should

apply because the defendant "held itself out as a resident of the District," and listed a D.C.

address on its website and corporate documents.  *Id.* at 1045.  The D.C. Circuit stated that

"[a]lthough  [the Court is] willing to assume [the defendant's] representations give the District of Columbia some interest in this dispute, that interest does not outweigh the interest of Maryland in ensuring corporations domiciled there do not mislead consumers."  *Id.*  Similarly, in this case defendant UHMD has conducted business in the District of Columbia, but that does not outweigh the fact that UHMD is a Maryland corporation and Maryland has an interest in ensuring that businesses incorporated and located in its state do not mislead Maryland residents, like the plaintiff, through advertisements published in Maryland.

Given that the plaintiff and defendant UHMD are residents of Maryland, consideration of this Restatement factor supports application of Maryland law.

### d.   Where the Relationship Between the Parties Is Centered

The fourth Restatement factor instructs the Court to determine where the relationship between the parties is centered.  Here, as the defendants notes, "all aspects of [plaintiff's] relationship that preceded picking-up [the rental] vehicle, and specifically all aspects of [plaintiff's] relationship that dealt with the alleged misrepresentation, occurred in Maryland." Def.' UHMD Mot. Summ. J., ECF No. 39, at 13-14.  The plaintiff and defendant UHMD are Maryland residents.  The defendants – UHMD, UHI, or both – published an advertisement in Maryland, which was sent to, viewed, and read by the plaintiff in Maryland.  After viewing the advertisement, the plaintiff made a U-Haul reservation in either Maryland or Ohio, and the communication between the plaintiff and the defendants occurred in Maryland.  Although the plaintiff went to the District of Columbia to pick-up his rental, where he also entered into a contract, the contract and his interaction at that location was with U Street Rentals.  As explained earlier, if the plaintiff had chosen to pursue a breach of contract claim, the plaintiff's contacts with the District of Columbia would factor more prominently.  In this action, however, where the

gravamen of the plaintiff's complaint is misrepresentation and false advertising, it is clear that the plaintiff's relationship with the defendants was centered in Maryland.

Having considered the four factors outlined by Section 145 of the Second Restatement, the Court concludes that Maryland law, rather than that of the District of Columbia, should govern this dispute.  The place of the plaintiff's alleged injury due to the defendants' alleged misrepresentations and failure to disclose certain charges occurred in Maryland, Louisiana, and Texas.  The alleged misconduct, namely where the misrepresentations were made, occurred in Maryland or Arizona, and the parties are also residents of those two states.  Finally, the relationship between the plaintiff and the defendants was centered in Maryland.

When weighing the Restatement factors, "contacts are to be evaluated according to their relative importance with respect to the particular issue."  Restatement (Second) of Conflict of Laws § 145(2).  Moreover, "a mere counting of contacts is not what is involved. The weight of a particular state's contacts must be measured on a qualitative rather than quantitative scale." *Washkoviak*, 900 A.2d at 181 (quoting *LeJeune v. Bliss-Salem, Inc.,* 85 F.3d 1069, 1072 (3d Cir. 1996)).  In cases involving misrepresentation, the place of the alleged injury is less important than the place where the conduct causing the injury occurred.  As the defendants note, this case is a "dispute between a Maryland company and a Maryland consumer, about advertising published in Maryland, which was received in Maryland, read in Maryland, and for which a reservation was made from Maryland." Def. UHI Suppl. Response, ECF No. 49, at 4.  The plaintiff's contacts with the District of Columbia are not significant to his misrepresentation and false advertising claims.  Given that the Restatement factors establish that Maryland has a more significant relationship to the plaintiff's claims, the plaintiff may not seek relief under the laws of

the District of Columbia, and, consequently, under the CPPA.  The defendants' motions for

summary judgment are therefore granted.

**IV.      CONCLUSION**

      For the foregoing reasons, the defendants' motions for summary judgment are granted.

An Order consistent with this Memorandum Opinion will be entered.


**DATED: OCTOBER 12, 2011**

                       /s/ *Beryl A. Howell*
                       BERYL A. HOWELL
                       United States District Judge